IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DAVID KING,

        Plaintiff,

vs.                                   No. CIV 99-1226 JC/KBM

BARBARA COTTAM, Mayor;
RICHARD HILL, Councilor;
EUGENE ERB, Councilor; and
VILLAGE OF ANGEL FIRE,
a New Mexico Municipality,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER came on for consideration of Plaintiff's Motion for Partial Summary

Judgment, filed June 8, 2000 *(Doc. 55)* and Defendants' Motion for Summary Judgment, filed

July 27, 2000 *(Doc. 102).* The Court has reviewed the motions, the memoranda and exhibits

submitted by the parties, and the relevant authorities. The Court finds that Plaintiff's Motion for

Partial Summary Judgment is not well taken and will be denied. The Court further finds that

Defendants' Motion for Summary Judgment will be granted in part and denied in part.

**I.**        **Background**

Plaintiff David King was appointed to the position of Administrator for the Village of

Angel Fire ("Village Administrator") in April of 1997. After a six month review of Plaintiff's job

performance, the Village Council voted to approve a written employment contract ("Village

Administrator Agreement") with Plaintiff on November 19, 1997. *See* Dfs.' Ex. A attached to

Dfs.' Motion for Summary Judgment, filed July 27, 2000 *(Doc. 103).* The Village Administrator

Agreement stated that the Village Council had the right to terminate the services of the Village

Administrator at any time.  *See id.* at Section 2.1.

Early in his employment, Plaintiff claims that he was concerned about the treatment of

Hispanic employees by the Village of Angel Fire.  Plaintiff allegedly submitted to the Mayor and

Village Council revisions of the Personnel Ordinance which included specific policies against

discrimination and retaliation.  *See* Pl.'s Response to Dfs.' Motion for Summary Judgment at 9, ¶

27, filed July 27, 2000 *(Doc. 104)*.  Plaintiff maintains that the Mayor and Village Council never

implemented his recommended revisions nor adopted policies of their own against discrimination.

*See id.* at 8-9.  Instead, Plaintiff alleges the Mayor and Village Council took active steps to

remove certain Hispanic employees.  *See id.*

Throughout his employment, Plaintiff also alleges that the members of the Village Council

were concerned about his political association and beliefs.  In particular, Plaintiff claims that

Defendant Cottam cautioned him not to support or vote for Chuck Hasford in the March 1998

Village Council election.  *See* Pl.'s Response to Dfs.' Motion for Summary Judgment at 24.

Moreover, Plaintiff claims that Defendant Cottam threatened to fire him for writing a letter on

October 15, 1998, to the *Taos News* which endorsed the re-election of Governor Gary Johnson.

*See id.*  Plaintiff finally contends that the community was concerned that the Angel Fire Resort

exerted undue influence and control over Defendants Cottam and Hill.  *See* Pl.'s Response to

Dfs.' Motion for Summary Judgment at 23.  Plaintiff argues that his opposition to this influence

upset Defendants Cottam and Hill, thereby causing them to discriminate against the Plaintiff based

upon his political beliefs.

In contrast, Defendants argue that Plaintiff's political beliefs with regard to Chuck Hasford

and Governor Gary Johnson were never considered when assessing the Plaintiff's job performance. *See* Dfs.' Motion for Summary Judgment at 11. With respect to Plaintiff's support of Chuck Hasford, Defendant Cottam claims that she did not know whom Plaintiff supported in the Village Council elections. Defendant Cottam further argues that even if she did have such knowledge, she did not have the power to terminate Plaintiff without a majority vote of the Village Council. With respect to Plaintiff's support of Governor Gary Johnson, Defendant Cottam maintains that she disapproved of the letter sent to *Taos News* because she felt it could be construed as the official position of the Village of Angel Fire. *See* Dfs.' Motion for Summary Judgment at 4, ¶ 15.

In June of 1998, the Village Council reviewed and evaluated Plaintiff's job performance and agreed to certain amendments to his written employment contract. *See* Pl.'s Ex. 3, Village Administrator Agreement Amendment attached to Pl.'s Motion for Partial Summary Judgment, filed June 8, 2000 *(Doc. 56).* One of the amendments required the Mayor and Village Council to annually review Plaintiff's job performance and set goals for the upcoming year no later than two weeks prior to the June 1 salary adjustment date. *See id.* ("Under VIII. Performance Review, Section 8.1 shall be amended to read:"). Both parties stipulated that if the Mayor and Council failed to evaluate Plaintiff's performance on or before June 30 of each year, his employment contract would automatically extend for an additional two year period. *See* Initial Pretrial Report at 3, ¶ 11, filed January 5, 2000 *(Doc. 20).* The Mayor and Village Council did not evaluate Plaintiff's job performance for the year subsequent to June 30, 1999. *See* Pl.'s Motion for Partial Summary Judgment at 4, ¶ 17. Thus, Plaintiff's employment contract was extended for an additional two year period on June 30, 1998.

3

On July 14, 1999, Plaintiff filed an EEOC charge claiming that he was threatened with cancellation of his employment contract for opposing alleged discrimination by the Village of Angel Fire.  Meanwhile, Defendants contend that Plaintiff's filing of an EEOC charge was nothing more than a calculated maneuver to ensure that his contract would not be terminated.  Defendants claims that if Plaintiff truly had been concerned about discrimination, then he would have filed the EEOC charge earlier, and not on the eve of a discussion regarding his contract.

On July 15, 1999, the Village Council had a meeting, and one of the topics on the agenda was Plaintiff's employment contract.  During the meeting, Defendants Eugene Erb and Richard Hill voted to terminate Plaintiff's employment contract, and Councilors Stansbury and Hasford voted against the termination.  Defendant Cottam cast the tie-breaking vote to terminate Plaintiff's employment contract.

When Plaintiff was originally hired, the Village of Angel Fire had in effect the Personnel Policy and Procedures, Ordinance 88-4 ("Personnel Ordinance").  *See* Dfs.' Ex. B attached to Dfs.' Motion for Summary Judgment.  Section 9.2.4 of the Personnel Ordinance states that an employee may be dismissed for cause, the cause shall be documented in writing, and the statement of cause shall be submitted to the Village Administrator.  *See id.*  Plaintiff now contends that he was not given a written explanation for his termination.  Moreover, Section 10.1 of the Personnel Ordinance allows an employee to participate in a grievance procedure for any perceived inconsistency in the application of Village rules or regulations.  *See id.*  Plaintiff also contends that he was not allowed to participate in the grievance procedures.  *See* Pl.'s Motion for Partial Summary Judgment at 6.

Plaintiff brings this suit claiming that Defendants (1) breached his employment contract,

(2) violated his due process rights, (3) violated his First Amendment right of association, (4) retaliated against him in violation of Section 704 of Title VII, 42 U.S.C. 2000e-3(a), and (5) retaliated against him in violation of 42 U.S.C. Section 1981.  Plaintiff now moves for partial summary judgment on the issues of breach of contract and violation of due process rights. Defendants also move for summary judgment on all five claims.

## II.    <u>Standard for Summary Judgment</u>

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (citations omitted).  Under FED. R. CIV. P. 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable to the non-moving party, determines that there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law. *See Thrasher v. B & B Chem. Co.*, 2 F.3d 995, 996 (10th Cir. 1993).  The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.  Once the movant meets this burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

III.     Analysis

A.     Breach of Contract

Plaintiff claims that his employment contract was breached when the Village Council

terminated him without cause and failed to provide him with grievance procedures.  Plaintiff

argues that Section 11.2 of the Village Administrator Agreement expressly incorporates the

following provisions of the Personnel Ordinance:  (1) the "for cause" provision under Section

9.2.4, and (2) the grievance procedures for an appeal of a disciplinary action under Sections

10.2.1-10.2.3.  *See* Pl.'s Motion for Partial Summary Judgment at 6.  Consequently, Plaintiff

claims the Defendants breached the Village Administrator Agreement when the Village Council

failed to provide him with a written explanation for his termination and declined to give him an

opportunity to appeal the decision.  *See id.*

Meanwhile, Defendants claim the employment contract was not breached since the Village

Council had the ability to terminate Plaintiff at any time.  Section 2.1 of the Village Administrator

Agreement states:  "Nothing in this agreement shall prevent, limit or otherwise interfere with the

right of the Village Council to terminate the services of the Administrator at any time, subject only

to the provisions set forth in Section 3.1, 3.2 and 3.3."  *See* Dfs.' Response to Plaintiff's Motion

for Partial Summary Judgment at 4.  Accordingly, Defendants contend that Plaintiff's employment

could be terminated at any time, and Plaintiff was not entitled to a "for cause" termination nor the

grievance procedures outlined in the Personnel Ordinance.  *See id.*

1.     Termination Section is Unambiguous

In order to analyze the breach of contract claim, the Court must first determine if the

contractual provisions dealing with Plaintiff's termination are ambiguous.  Under the applicable

state law, the question of whether a written contract contains an ambiguity is a question of law.

*See Boatwright v. Howard*, 102 N.M. 262, 694 P.2d 518, 520 (1985).  An ambiguity exists if a

court determines that the contract is reasonably and fairly susceptible of different constructions.

*See Mark V, Inc. v. Mellekas*, 114 N.M. 778, 781, 845 P.2d 1232, 1235 (1993).  However, if the

evidence presented is so plain that no reasonable person could hold any way but one, then the

court may interpret the meaning as a matter of law.  *See id.*

Section 2.1 of the Village Administrator Agreement clearly states:  "Nothing in this

agreement shall prevent, limit or otherwise interfere with the right of the Village Council to

terminate the services of the Administrator at any time, subject only to the provisions set forth in

Sections 3.1, 3.2 and 3.3 of this agreement."  *See* Pl.'s Ex. 3 at 1, attached to Pl.'s Motion for

Partial Summary Judgment.  This provision indicated that the Village Council can terminate the

Administrator at any time, subject only to the limitations in Sections 3.1 (dealing with severance

pay), 3.2 (dealing with a reduction in salary), and 3.3 (dealing with a voluntary resignation by the

Administrator).  *See id.* at 2-3.  Nowhere in these limiting provisions do Defendants promise to

terminate Plaintiff "for cause" or allow him to engage in any type of grievance procedures.

Accordingly, the Court finds that Section 2.1 is unambiguous, and Defendants were entitled to

terminate Plaintiff at "any time."

### 2.      Plaintiff's Construction of the Personnel Ordinance

Plaintiff attempts to argue that Section 11.2 of the Village Administrator Agreement

incorporates certain provisions of the Personnel Ordinance adopted by the Village Council.

Specifically, Plaintiff claims that as an employee, he should have been dismissed for cause with a

written explanation according to Section 9.2.4, and he should have been allowed to engage in the

grievance procedures outlined in Sections 10.2.1-10.2.3 of the Personnel Ordinance. *See* Pl.'s

Motion for Partial Summary Judgment at 6.

The law favors a reasonable rather than unreasonable interpretation when construing a

contract. *See State ex rel. Udall v. Colonial Penn Ins. Co.,* 112 N.M. 123, 130, 812 P.2d 777,

784 (1991). In reviewing Plaintiff's argument, the Court finds that Plaintiff's construction of

Section 9.2.4 and of the Personnel Ordinance is unreasonable. Further discussion of Plaintiff's

argument illustrates this point.

Section 9.2.4 of the Personnel Ordinance states: "Upon review by the Village Council of

the facts, an employee may be dismissed for cause. The cause for such dismissal shall be

documented in writing. The statement of cause shall be submitted to the Village Administrator on

or before the date of dismissal." *See* Dfs.' Ex. B, Personnel Ordinance at 15, attached to Dfs.'

Motion for Summary Judgment. The plain language of this provision clearly involves three

distinct entities: an employee, the Village Council, and the Village Administrator. The language

of this provision simply does not support a conclusion that an "employee" is the same as the

"Village Administrator." If the Court were to assume Plaintiff is correct and Section 11.2. of the

Village Administrator Agreement incorporates Section 9.2.4 of the Personnel Ordinance, Plaintiff

would be considered both an employee and the Village Administrator. Yet, it is clear throughout

the Personnel Ordinance that a distinction exists between an "employee" and the "Village

Administrator." For example, in the definition section of the Personnel Ordinance, the terms

"employee" and "Village Administrator" are defined separately. An "employee" is "[a]n

authorized and appointed incumbent of a position in the municipal service." *See* Dfs.' Ex. B,

Personnel Ordinance at 2, attached to Dfs.' Motion for Summary Judgment. The "Village

Administrator" is the "[t]he Chief Administrative Officer of the Village, appointed by the Mayor and Village Council." *See id.* at 3. If the drafters of the Personnel Ordinance intended for the Village Administrator to be considered an employee, then it could have provided only one definition--that of an "employee." However, a complete reading of the remaining provisions of the Personnel Ordinance clearly shows that "employees" are separate and distinct from the "Village Administrator." Any alternative reading of the Personnel Ordinance would be unreasonable. Therefore, the Court finds that Section 9.2.4 of the Personnel Ordinance only applies to employees and not to the Village Administrator.

Plaintiff also maintains that grievance procedures under Sections 10.2.1-10.2.3 of the Personnel Ordinance apply to his employment contract. Section 10.1.1 (Ground for Grievance) states: "With the exception of disciplinary action, an eligible employee may file a grievance in response to any perceived inconsistency in the application of any Village rules or regulations." *See* Dfs.' Ex. B, Personnel Ordinance at 15, attached to Dfs.' Motion for Summary Judgment. In order to understand what constitutes a "disciplinary action," one must turn to the definitions section of the Personnel Ordinance. "Discipline" is defined as "[a]ction taken by a supervisor with regard to an employee, including reprimand, suspension, demotion or dismissal." *See id.* at 2. "Dismissal" is defined as "the termination of an employee." *See id.* Plaintiff was terminated on July 15, 1999, by the Village Council. Therefore, if the Personnel Ordinance applies to Plaintiff's employment contract, Plaintiff's termination is defined as a disciplinary action, and Section 10.1.1 of the Personnel Ordinance does not give him grounds to engage in the grievance procedures. Again, Plaintiff's interpretation of his employment contract is unreasonable.

Furthermore, if Section 10.2.1-10.2.3 were to apply to Plaintiff's employment, the

9

unambiguous language would again involve two different positions--an "employee" and the "Village Administrator."  For instance, Section 10.2.2.1 states:  "The employee shall submit the appeal in writing to the Village Administrator within seven calendar days of the effective date of the disciplinary action."  *See* Dfs.' Ex. B, Personnel Ordinance at 17, attached to Dfs.' Motion for Summary Judgment.   This Court refuses to engage in a creative construction of the contract and determine that an "employee" is the same as the "Village Administrator."  Thus, this Court finds that Sections 10.2.1-10.2.3 of the Personnel Ordinance do not apply to Plaintiff in his position as the Village Administrator.

### 3.    Conclusion

Based on the above reasoning, the Court finds that the Plaintiff's written employment contract (the Village Administrator Agreement) was not breached.  The Village Administrator Agreement unambiguously allowed the Defendants to terminate Plaintiff's services at any time.  In addition, the Court finds that Plaintiff's proposed construction of the Village Administrator Agreement and the Personnel Ordinance is unreasonable.  Therefore, the Court finds no need to address the remaining arguments regarding the breach of contract.  Accordingly, Plaintiff's Motion for Partial Summary Judgment regarding a breach of contract will be denied, and Defendants' Motion for Summary Judgment regarding a breach of contract will be granted.

### B.    Violation of Due Process Rights

Plaintiff next moves for partial summary judgment claiming that he had an established property right in his position, and his termination without proper notice and without an opportunity to be heard was in violation of his procedural due process rights.  *See* Pl.'s Motion for Partial Summary Judgment at 8.  Defendants also move for summary judgment claiming that

Plaintiff did not have a protected property interest in his position.  *See* Dfs.' Motion for Summary

Judgment at 7-8.

In order to assess whether an employee was denied procedural due process, "courts must

engage in a two-step inquiry:  (1) did the individual possess a protected interest such that due

process protections were applicable, and, if so, then (2) was the individual afforded an appropriate

level of process."  *Hatfield v. Bd. of Cty. Com'rs for Converse City*, 52 F.3d 858, 862 (10th Cir.

1995) (internal citations omitted).   "To prevail on a due process claim against state officials, a

plaintiff must first demonstrate that the Due Process Clause of the Fourteenth Amendment

protects the liberty or property interest of which [he] was allegedly deprived."  *Id.* at 863, citing

*Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 569 (1972). "[T]he preliminary

question of whether a plaintiff possessed a protected property interest must be determined by

reference to state law."  *Id.* at 863, citing *Casias v. City of Raton*, 738 F.2d 392, 394 (10th Cir.

1984).

 In New Mexico, property interests are "created and their dimensions are defined by

existing rules or understandings that stem from an independent source."  *Clark v. New Mexico*

*Children, Youth and Families Department*, 1999-NMCA-114, ¶ 18, 128 N.M. 18, 25, 988 P.2d

888, 895 (N.M. Ct. App. 1999) (citing  *Board of Regents of State Colleges v. Roth*, 408 U.S.

564, 577 (1972)).  Therefore, the sufficiency of any claim of entitlement must be decided by

referencing the independent source of rules or understandings that secure the claimed benefit.  *See*

*id.*

In this case, Section 2.1 of the Village Administrator Agreement clearly states:  "Nothing

in this agreement shall prevent, limit or otherwise interfere with the right of the Village Council to

terminate the services of the Administrator at any time, subject only to the provisions set forth in

Sections 3.1, 3.2 and 3.3 of this agreement." *See* Pl.'s Ex. 3 at 1, attached to Pl.'s Motion for

Partial Summary Judgment.  Plaintiff does not have a property interest of continued employment

arising under the Village Administrator Agreement because his services can be terminated at "any

time."[1]

In the alternative, Plaintiff claims that his property interest was vested in the Personnel

Ordinance, and he was denied due process because he was dismissed without cause and not

allowed to participate in the grievance procedures.  *See id.*; *see also* Pl.'s Motion of Partial

Summary Judgment at 8.  As discussed above with respect to the breach of contract claim,

Section 9.2.4 and Sections 10.2.1-10.2.3 of the Personnel Ordinance are inapplicable to Plaintiff's

employment.  Therefore, Plaintiff has also failed to allege a deprivation of a property interest

arising out of the Personnel Ordinance for which he is entitled to due process.  Accordingly,

Plaintiff's Motion for Partial Summary Judgment regarding due process is hereby denied, and

Defendant's Motion for Summary Judgment regarding the due process claim will be granted.

### C.      Violation of First Amendment Right of Association

Defendants move to dismiss Plaintiff's claim that he was discriminated against based upon

his political beliefs in violation of the First Amendment Right of Association.  *See* Dfs.' Motion

---

[1]Plaintiff may have a cognizable property interest in Sections 3.1, 3.2, and 3.3 of the employment contract.  Section 3.1 outlines conditions which entitle Plaintiff to severance pay:  "In the event Administrator is terminated by the Village Council...the Village agrees to pay Administrator a lump sum cash payment equal to three months aggregate salary...."  *See id.* at 2.  Section 3.2 deals with a reduction in the Village Administrator's salary, and Section 3.3 deals with proper notification by the Village Administrator in the event of a voluntary resignation.  In reviewing the record, only Section 3.1 might be applicable.  However, Plaintiff does not claim that his employment contract was breached because Defendants denied him severance pay, and there are no facts on the record to support such a conclusion.  *See* Complaint at 13-14 *(Doc. 1).*

for Summary Judgment at 11.  In order to defeat a motion for summary judgment on a freedom of

association claim, a plaintiff must establish a genuine dispute of fact that (1) political affiliation

and/or beliefs were 'substantial' or 'motivating' factors behind the dismissal, and (2) the

employment position did not require political allegiance.  *See Barker v. City of Del City*, 215 F.3d

1134, 1138 (10th Cir. 2000).  Defendants admit that Plaintiff's employment position did not

require political allegiance.  *See* Pl.'s Ex. 7, Request for Admission Number 7, attached to Pl.'s

Response to Dfs.' Motion for Summary Judgment.  Therefore, the only issue in dispute is whether

Plaintiff's political affiliation and/or beliefs were substantial or motivating factors behind his

dismissal.

Both parties have submitted a number of disputed facts regarding the issue of whether

Plaintiff's political affiliations and/or beliefs were motivating factors behind his dismissal.  For

instance, Plaintiff alleges that he was terminated, in part, because of his support of Chuck Hasford

in the 1998 Village Council election.  Plaintiff supports this allegation by pointing to a letter

written to him by Defendant Cottam on January 28, 1998, wherein she allegedly warned against

the election of Mr. Hasford to the Village Council.  *See* Ex. 2 attached to Pl.'s Response to

Defendants' Motion for Summary Judgment.  In turn, Defendant Cottam claims she did not know

whom Plaintiff supported in the Village Council elections.  *See* Dfs.' Motion for Summary

Judgment at 13.

Similarly, Plaintiff contends that a contributing factor in his termination was his support of

Gary Johnson in the 1998 gubernatorial election.  Plaintiff alleges that Defendant Cottam

threatened to fire Plaintiff because of a letter he wrote to a local newspaper endorsing Gary

Johnson.  *See* Pl.'s Response to Dfs.' Motion for Summary Judgment at 24.  However, Defendant

Cottam maintains that her criticism of Plaintiff's letter was unrelated to political affiliation;

instead, her comments were meant to discourage Plaintiff from taking a position on issues in

public forums that might be interpreted as official endorsements by the Village of Angel Fire.  *See*

Dfs.' Motion for Summary Judgment at 12.

"Whether an employer would have reached the same employment decision without regard

to an employee's constitutionally protected conduct is generally a question appropriately resolved

by the finder of fact."  *Ortiz v. San Miguel County, et al.,* 955 F.Supp. 1338, 1344 (D.N.M.

1996).  Therefore, I find disputed issues of fact regarding Plaintiff's claim that Defendants

violated his First Amendment Right of Association by terminating him based upon his political

beliefs.  Accordingly, Defendant's Motion for Summary Judgment on the freedom of association

claim will be denied.

### D.     Retaliation

Finally, Defendants move to dismiss Plaintiff's claim of retaliation in violation of Title VII

and Section 1981.  *See* Dfs.' Motion for Summary Judgment at 15.  In order to establish a prima

facie case of retaliation, a plaintiff must show:  (1) he engaged in protected opposition to Title VII

discrimination or participated in a Title VII proceeding; (2) he suffered an adverse employment

action contemporaneous with or subsequent to such opposition or participation; and (3) a causal

connection exists between the protected activity and the adverse employment action.  *See Cole v.

Ruidoso Mun. Schools,* 43 F.3d 1373, 1381 (10th Cir. 1994).  These same elements must be

shown for a retaliation claim brought pursuant to 42 U.S.C. § 1981.  *See Perry v. Woodward*, 199

F.3d 1126, 1141 fn.12 (10th Cir. 1999).  In this case, Defendants only argue that Plaintiff's

complaints regarding discriminatory treatment of Hispanics and/or the filing of his EEOC charge

cannot be causally connected to the termination of his contract based on the questionable timing

of his complaints.  Defendants maintains that if Plaintiff was truly concerned about the

discriminatory treatment, then he should have filed an earlier or more timely EEOC complaint.

*See* Dfs.' Motion for Summary Judgment at 16-17.

   The requisite causal connection for a claim of retaliation may be shown by producing

"evidence of circumstances that justify an inference of retaliatory motive, such as protected

conduct closely followed by adverse action."  *Burrus v. United Telephone Co. of Kansas, Inc.*,

683 F.2d 339, 343 (10th Cir.1982).  Although Plaintiff filed his complaint a day before his

contract was reviewed by the Village Council, Defendant Erb stated in his deposition:  "Number

one, I had been concerned about the arrival of the EEOC complaint, and I was afraid that if we

responded by giving additional time, we may be delaying the inevitable."  Pl.'s Ex. 20, Deposition

of Eugene Erb at 163, lines 10-13, attached to Pl.'s Response to Defs.' Motion for Summary

Judgment.  The Court finds that this statement could lead to an inference that the EEOC

complaint was considered in connection with Plaintiff's termination.

   In addition, Plaintiff allegedly submitted to the Mayor and Village Council revisions of the

personnel policies which included specific policies against discrimination and retaliation.  *See* Pl.'s

Ex. 1, Deposition of David King at 182-83, attached to Pl.'s Response to Dfs.' Motion for

Summary Judgment.  The Village of Angel Fire did not adopt the policies and procedures

proposed by Plaintiff.  *See* Pl.'s Ex. 7, Request for Admission Nos. 36 and 37, attached to Pl.'s

Response to Dfs.' Motion for Summary Judgment.  Plaintiff also took active steps to discourage

Defendants from retaliating against employees who also filed charges of discrimination with the

EEOC.  *See* Pl.'s Response to Dfs.' Motion for Summary Judgment at 27.   This evidence,

coupled with the showing of a temporal proximity between his filing of his EEOC complaint and

his termination, is sufficient to establish causation and to withstand summary judgment.

Finally, the Court rejects Defendants request that it adopt the reasoning of *Smith v. Singer

Co.*, 650 F.2d 214 (9th Cir. 1981), and hold that any discussion of Plaintiff's EEOC complaint in

the context of his termination was allowable because Plaintiff's job included EEOC

responsibilities.  In *Smith,* the plaintiff filed discrimination charges because he disagreed with his

employer's personnel policies, and he then proceeded to hide the fact that he was the one who

filed charges against his employer.  Since it was plaintiff's responsibility to enforce anti-

discrimination policies and to keep his employer informed of all aspects of affirmative action

compliance, the plaintiff's failure to disclose his identity as the complaining party resulted in a

"manifest failure to perform the vital duties which his position required." *Id.* at  216.  The facts of

*Smith* are distinguishable from the case at hand.  Plaintiff never concealed his identity as the

complaining party.  Furthermore, while Plaintiff's job arguably included responsibilities for EEOC

compliance, the scope of his duties was much broader.  Finally, the plaintiff in *Smith* "never

contended that he himself suffered discrimination.  The EEOC charge was filed on behalf of other

employees." *Id.* at 215 fn.2.  In this case, Plaintiff contends that he personally suffered direct

retaliation due to his complaints about the discriminatory treatment of Hispanics and the filing of

his EEOC complaint.  Thus, the Court finds *Smith* inapplicable, and Defendant's Motion for

Summary Judgment with respect to retaliation in violation of Title VII and Section 1981 will be denied.

## IV.    <u>Conclusion</u>

Plaintiff's employment contract was not breached because it unambiguously allowed the Defendants to terminate Plaintiff's services at any time.  In addition, the Court finds that Plaintiff's proposed construction of the employment contract is unreasonable.  Plaintiff also failed to allege a deprivation of a property interest for which he is entitled to due process.  Finally, the Court finds disputed material facts with respect to Plaintiff's freedom of association and retaliation claims which preclude summary judgment.

For the above reasons, the Court finds that Plaintiff's Motion for Partial Summary Judgment is not well taken and will be denied.  The Court further finds that Defendants' Motion for Summary Judgment will be granted in part and denied in part.

Wherefore,

IT IS ORDERED that Plaintiff's Motion for Partial Summary Judgment, filed June 8, 2000 *(Doc. 55)* is hereby denied.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment, filed July 27, 2000 *(Doc. 102)* is hereby granted in part, and Plaintiff's claims for breach of contract and due process violations are dismissed with prejudice.

IT IS FINALLY ORDERED that Defendants' Motion for Summary Judgment, filed July 27, 2000 *(Doc. 102)* is hereby denied, in part, with respect to Plaintiff's claims for a violation of First Amendment Right of Association and retaliation in violation of Title VII and Section 1981.

DATED this 20th day of December.

_____
UNITED STATES DISTRICT JUDGE

Attorney for Plaintiff,
    J. Edward Hollington, Esq.
    J. Edward Hollington & Associates, P.A.
    Albuquerque, New Mexico

Attorneys for Defendants,
    James P. Sullivan, Esq.
    Kristin McKeever, Esq.
    Hatcher, Sullivan & Grand, P.A.
    Santa Fe, New Mexico